

FILED

DEC 11 2012

Clerk, U.S District Court
District Of Montana
Great Falls

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 09-89-GF-SEH |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| MARVIN JEROME FASTHORSE, | |
| Defendant/Movant. | |

On September 10, 2012, Defendant/Movant Marvin Jerome Fasthorse ("Fasthorse"), a federal prisoner proceeding pro se, moved to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

### I. Preliminary Screening

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. It has been done.

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) (*"Nicolaus"*) (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On August 20, 2009, Fasthorse was indicted for sexual abuse, that is, engaging in a sexual act with a person physically incapacitated, a violation of 18 U.S.C. § 2242(2)(b). Jurisdiction was predicated on the Major Crimes Act, 18 U.S.C. § 1153(a). Indictment (doc. 1) at 2. Assistant Federal Defender Evangelo Arvanetes was appointed to represent him. Order (doc. 5).

Fasthorse asserted that law enforcement officers elicited a statement from him after he had asked to speak to a lawyer. A hearing was held on December 1, 2009. Officer Headdress greeted Fasthorse by saying, "What's up, Marvin?" Fasthorse spontaneously responded, "I wish I could take back yesterday," or words to that effect. That statement, though made while Fasthorse was in custody, was not a

ORDER / PAGE 2

response to interrogation, was voluntary, and was admissible. Fasthorse was then advised the agents could not speak with him until he had been advised of his rights. He was given a *Miranda* warning. It was read to him, he read it, and he signed it. Agent DeVantier asked him a few questions. Fasthorse named a couple of locations where he had been the previous day but stated he did not remember much due to intoxication. He then invoked his right to counsel and was not further questioned. His statements were voluntary, were made after an appropriate *Miranda* warning, and were admissible. Suppression Hr'g (doc. 49) at 76:22-82:13.

Trial commenced on December 29, 2009. The victim testified that she fell asleep in her bedroom and then woke to find Fasthorse on top of her, engaged in sexual intercourse with her. Fasthorse also testified. He gave a detailed account of his movements on the day and night in question, including a detailed account of his encounter with the victim. 2 Trial Tr. (doc. 83) at 184:1-190:19, 199:7-210:15; *see also id.* at 249:4-250:25. The jury deliberated for about three hours and returned a verdict of guilty. Verdict (doc. 66).

A presentence report was prepared. Fasthorse's total adjusted offense level was 30. The criminal history category was II. The advisory guideline range was 108-135 months. Sentencing Tr. (doc. 85) at 4:10-15. On April 8, 2010, Fasthorse was sentenced to serve 130 months in prison, to be followed by a five-year term of

supervised release. Judgment (doc. 76) at 2-3.

Fasthorse appealed, challenging the sufficiency of the evidence and the reasonableness of the sentence. The Court of Appeals affirmed both the conviction and the sentence on April 1, 2011. *United States v. Fasthorse*, 639 F.3d 1182, 1185 (9th Cir. 2011).

Fasthorse's conviction became final on October 3, 2011, when the United States Supreme Court denied his petition for writ of *certiorari*. *Fasthorse v. United States*, No. 11-5173 (U.S. Oct. 3, 2011). He timely filed this § 2255 motion on September 10, 2012. 28 U.S.C. § 2255(f)(1).

### III. Claims and Analysis

#### A. Right to Counsel at Interrogation

Fasthorse asserts that he was denied his right to counsel when he was interrogated. Mot. § 2255 (doc. 96) at 5.[1] The Court has already found he was not denied that right, and that is the law of the case. Fasthorse presents no reason, other than his evident disagreement, to revisit the Court's findings or conclusions on the motion to suppress. *See United States v. Renteria*, 557 F.3d 1003, 1006-07 (9th Cir. 2009); *United States v. Phillips*, 367 F.3d 846, 856 & nn.32-35 (9th Cir. 2004);

---

[1] Page numbers refer to the document's pagination, not CM-ECF pagination.

*United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). This claim is denied.

**B. Grand Jury**

Fasthorse's second claim alleges "vouching to grand jury." The grand jury is an independent body; it is neither the prosecution nor the Court. It is asked only to determine whether there is probable cause to support an indictment. It may consider hearsay or other evidence that would be incompetent or inadmissible at trial. It may find an indictment solely on the testimony of a government witness who was not present at the incident in question. The United States is not required to present exculpatory evidence to the grand jury. A defendant has no right to testify or attend or even be notified of a grand jury's investigation. *See generally United States v. Williams*, 504 U.S. 36, 45-52 (1992). Fasthorse questions whether the grand jury knew federal law or was "legal in procedure," but he presents no reason to doubt the regularity of its proceedings, and "the petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendant[] with the offenses for which [he was] convicted." *United States v. Mechanik*, 475 U.S. 66, 67 (1986). Fasthorse claims that Agent DeVantier testified before the grand jury that "alleged victim was awake." Mot. § 2255 at 6. Agent DeVantier was cross-examined on that point at trial, and the agent clarified that she said the victim "wasn't drunk at that time when she woke up." 2 Trial Tr. at 215:20-

216:3.

There is no claim to be made here. This claim is denied.

## C. Ineffective Assistance of Counsel

*Strickland v. Washington*, 466 U.S. 668 (1984), governs claims alleging ineffective assistance of counsel. First, Fasthorse must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. Second, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### 1. Rape Kit Exam

Nurse Judy Lauridsen testified about her examination of the victim and statements made by the victim in the course of the examination, refreshing her recollection by reference to a form Lauridsen completed at the time. *See* Fed. R. Evid. 803(4), (5). Although Arvanetes could have sought admission of the form into evidence, Fed. R. Evid. 803(5), Lauridsen testified about its meaning. There is no reason even to suspect that the jury might have acquitted Fasthorse if only the form

had been admitted into evidence. Neither element of the *Strickland* test is met. This claim is denied.

### 2. Impeachment of Victim

Fasthorse alleges that Arvanetes "never tried to impeach alleged victim at trial," failed to realize that the victim "contradicted herself" in responding to a medical questionnaire when she "answered questions that only someone who was wide awake could know the answers to," and failed to elicit exculpatory evidence from the victim. Mot. § 2255 at 8. The trial transcript refutes these claims. Lauridsen explained that the victim initially answered some questions "No," then clarified that she did not know the answers. 1 Trial Tr. at 104:13-105:25. Arvanetes emphasized the victim's coherence and the absence of signs of intoxication when she reported the assault to law enforcement and when she completed the medical exam some time later with Nurse Lauridsen. *Id.* at 41:14-42:5, 101:9-16, 103:12-21. Arvanetes attacked the victim's credibility by showing that she did not tell Lauridsen about smoking marijuana or taking Oxycodone, though both were found in her blood. *Id.* at 82:19-25, 106:6-9. Nothing in Lauridsen's or the victim's testimony suggested she was "wide awake" for the entire encounter; only Fasthorse asserted that fact. Fasthorse does not identify any exculpatory evidence Arvanetes should have elicited from the victim. This claim is denied.

### 3. Cell Phone Records

Cell phone records might have corroborated what Fasthorse said about the reprogramming of his cell phone, 2 Trial Tr. at 184:20-23, 186:2-187:10, but they could not show who did it. They might also contradict what Fasthorse said, but they could not show the victim asked to borrow the cell phone and then initiated sex with Fasthorse. Neither element of the *Strickland* test is met. This claim is denied.

### 4. Plea Agreement

Fasthorse complains that counsel "tried to have me take a plea agreement saying I'd be out in five years." This complaint meets neither element of the *Strickland* test. It is denied.

### 5. Sylvester Martin

Martin was not present when Fasthorse and the victim had intercourse. There is no reason to think he could have testified that the victim was not asleep, as she said, or was not intoxicated, as her blood and urine tests showed. 1 Trial Tr. at 119:6-24, 124:8-11, 125:23-126:1. Issues of who was at Martin's house and when, whether Martin wanted Fasthorse to leave, when and with whom the victim left, and when and with whom Fasthorse left were peripheral. There is no reasonable probability that Fasthorse would have been acquitted if only the jury knew exactly what transpired at Martin's house. Neither *Strickland* element is met. This claim is denied.

### 6. Objections to Fasthorse's Cross-Examination

Fasthorse identifies no legal basis for an objection. The trial transcript shows none. This claim is denied.

### 7. Hearsay from DeVantier

Finally, Fasthorse claims that Arvanetes should have objected to hearsay testimony by Agent DeVantier. He does not identify any such hearsay. The agent relayed hearsay from the victim when Arvanetes asked her what she told the grand jury, but he wanted the jury to hear what the agent had told the grand jury. There was nothing unreasonable about that decision. 1 Trial Tr. at 215:25-217:10. Other than Fasthorse's tribal enrollment record, which was admitted by stipulation, *see* 1 Trial Tr. at 5:3-14, 137:15-138:9, Agent DeVantier offered no other hearsay testimony. This claim is denied.

## D. Sentencing

Finally, Fasthorse asserts that the prosecution committed misconduct by using his tribal court record to "dehumanize" him at sentencing. A defendant's sentence is based on everything known about him, including any criminal record in other courts. 18 U.S.C. § 3553(a)(1); *see also, e.g.*, U.S.S.G. § 4A1.3(a)(2)(A). There was no misconduct. This claim is denied.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Fasthorse's claims do not meet the standard. He did not appeal the denial of his motion to suppress, and he presents no reason to alter the law of the case. Fasthorse presents no cognizable ground of attack on the grand jury proceedings. His claims of ineffective assistance of counsel either assert that counsel should have objected to unobjectionable testimony or allege that counsel failed to discover evidence corroborating his account of what happened and failed to defeat the victim's account. Fasthorse identifies nothing that counsel could have done, yet failed to do, that realistically could have given rise to reasonable doubt. Finally, reference to Fasthorse's tribal court history at sentencing was not remotely objectionable.

Fasthorse fails to make any showing that he was actually deprived of a constitutional right. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Fasthorse's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (doc. 96) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Fasthorse files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 12-72-GF-SEH are terminated and shall close the civil file by entering judgment in favor of the United States and against Fasthorse.

DATED this 11th day of December, 2012.

Sam E. Haddon
United States District Court